IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| KANDISE NADINE LUCAS,<br>   Plaintiff, | )<br>)<br>) |
| v. | )  Civil Action No. 3:23CV19 (RCY) |
| INTERCEPT YOUTH SERVICES, INC.,<br>   Defendant. | )<br>)<br>)<br>) |

**MEMORANDUM OPINION**

This matter is before the Court on a Motion to Dismiss (ECF No. 3) filed by Defendant Intercept Youth Services, Inc. ("Intercept" or "Defendant") on January 25, 2023. The Court concludes that oral argument is unnecessary because the facts and legal arguments are adequately presented in the parties' briefs. For the reasons set forth below, Defendant's Motion to Dismiss will be granted, and this civil action will be dismissed.

**I. RELEVANT PROCEDURAL BACKGROUND**

On January 6, 2023, Defendant removed this action from Richmond City Circuit Court on the basis of federal question jurisdiction. Notice of Removal, ECF No. 1. Defendant, having not filed an answer or other responsive pleading in state court prior to removal, timely filed an Answer (ECF No. 5) and the instant Motion to Dismiss (ECF No. 3) on January 25, 2023, accompanied by a proper *Roseboro* Notice pursuant to Rule 7(K) of the Local Civil Rules of the United States District Court for the Eastern District of Virginia. Mem. Supp. Mot. Dismiss, ECF No. 4; *see* E.D. Va. Loc. Civ. R. 7(K). Plaintiff filed a Response in Opposition to Defendant's Motion on February 16, 2023, and Defendant filed a Reply on February 22, 2023. Opp'n, ECF No. 6; Reply, ECF No. 8. Defendant subsequently filed a Request for a Hearing (ECF No. 9); however, the Court does not find a hearing to be necessary. Defendant's Motion to Dismiss is accordingly ripe.

## II. FACTUAL ALLEGATIONS

Plaintiff Kandise Nadine Lucas is an African American female and a former Foster Family Trainer Supervisor for Intercept. Compl., ECF No. 1-1, ¶¶ 5–6. This position was created specifically for Lucas. *Id.* ¶ 6. This case stems from the circumstances surrounding Plaintiff's departure from Intercept.

On or about September 10, 2021, Lucas sent the CEO of Intercept, Mark Bogert, a "detailed complaint of a hostile work environment at Treatment Foster Care" (a division of Intercept). *Id.* ¶ 8. Lucas complained that the conduct of certain supervisory staff at Intercept "interfered with [] employees' work performance which created a hostile, intimidating or offensive work environment." *Id.* ¶ 9. Lucas alleges that the "hostile culture was conceded to" by Intercept Director Jennifer Shively. *Id.* In support of the complaint submitted to Bogert, Lucas referenced one of her bi-weekly supervision sessions with Shively, during which Shively reportedly told Lucas that she was unresponsive to email communications, that she was not properly supervising her subordinate Foster Family Trainers ("FFTs"), and that she was conducting personal advocacy work during her on-the-clock hours for Intercept. *Id.* ¶ 10. Lucas asserts that these claims are false and undocumented, and that they are contradicted by Lucas's prior annual performance evaluations, none of which contain such allegations. *Id.* ¶¶ 10–11. In light of her interaction with Shively and in response to Shively's statements, Lucas requested in her complaint to Bogert that she and the FFTs under her supervision be "removed from the jurisdiction of [Treatment Foster Care] and that an investigation be conducted regarding her claims of hostile work environment. *Id.* ¶ 12.

Intercept CFO Jeffrey Marinelli responded to Lucas's complaint on September 16, 2021 and stated that an investigation would be conducted. *Id.* ¶ 13. Lucas responded to his email and

recounted "another incident of hostile work environment" that occurred during a Microsoft Teams call among Intercept staff. *Id.* ¶ 14. During this call, another Intercept employee reportedly critiqued the training being provided by FFTs to potential foster families and made a post-meeting comment (overheard by Lucas on the still-live Teams call) that the call "was a f*cking mess, but it went better than [she] thought." *Id.* ¶¶ 14–16. Lucas further reported that staff members were gossiping about the FFTs and someone referred to an FFT discussion panel as a "shit show". *Id.* ¶ 17.

On October 12, 2021, Intercept's Senior Director of Human Resources emailed Lucas, thanked her for bringing her concerns to Intercept's attention, and reported the results of Intercept's Human Resources investigation, writing:

> It does appear that inappropriate language was used, and communication and collaboration concerns are valid issues. However, it does not appear that any of these behaviors result in an intimidating, hostile, or abusive work environment. . . . I can tell you that the company is taking appropriate action and is in the process of improving these behaviors.

*Id.* ¶ 19. Lucas responded that she was "extremely disappointed in" Intercept's investigation findings and proposed an "immediate solution to save [the FFT] department," which she asserted had the support of the other FFTs. *Id.* ¶ 20. Specifically, Lucas proposed that Intercept break the FFTs into their own department and re-hire a former employee to serve as their direct supervisor, answerable only to Intercept's CEO or CFO. *Id.* Lucas suggested that she and other FFTs were considering leaving Intercept if her proposal was not adopted. *Id.* ¶¶ 20, 22.

On October 19, 2021, Lucas met with Mark Bogert and Jeffrey Marinelli, Intercept's CEO and CFO, respectively. *Id.* ¶ 23. The meeting lasted three hours, during which time Bogert and Marinelli "repeatedly demanded that Lucas rescind her claim" regarding a hostile work environment within the Treatment Foster Care division of Intercept and suggested that Lucas

herself was the source of dysfunction in the workplace. *Id*. ¶¶ 24–25. Lucas objected to the fact that neither Bogart nor Marinelli would agree to interview four of her subordinate FFTs, all of whom would corroborate Lucas's claims of a hostile work environment, she asserted. *Id*. ¶ 26. At the conclusion of the meeting, Bogart informed Lucas that it was best if Lucas separate from Intercept and that he did not believe Lucas would comply with the directives of her supervisor, Jennifer Shively. *Id*. ¶¶ 30–31. Lucas was accordingly terminated but refused to accept or sign the severance package offered. *Id*. ¶ 34. This lawsuit followed.

### III. STANDARD OF REVIEW

Defendant seeks dismissal of this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss under Federal Rule 12(b)(6) should be granted if a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A Rule 12(b)(6) motion "tests the sufficiency of a complaint and 'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Johnson*, 682 F. Supp. 2d at 567 (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). As such, the Court must accept all factual allegations contained in Plaintiff's Complaint as true and draw all reasonable inferences in favor of Plaintiff. *Id*. However, pleadings that offer simply "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient to state a claim for relief. *Twombly*, 550 U.S. at 555.

While it is true that pleadings by *pro se* plaintiffs must be held to a less stringent standard than those drafted by lawyers, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the pleadings must nevertheless set forth enough facts to state a claim.

## IV.  ANALYSIS

The Complaint lists four counts:  Count I ("Race Discrimination") alleges discriminatory discharge; Count II ("Race Disparity in Disciplinary Action") alleges disparate treatment; Count III ("Hostile Work Environment") alleges hostile work environment based on gender; and Count IV ("Retaliation") alleges that Lucas was fired for complaining about said hostile work environment.  Compl. 9–10.  As set forth in greater detail below, Plaintiff has failed to allege sufficient facts to support any of these claims, because the Complaint contains no facts on which the Court could find that Plaintiff was subjected to any particular action based on her race or gender, or that Defendant was put on notice of—and retaliated against Plaintiff in relation to—a valid Title VII complaint.

**A. Plaintiff Does Not Allege Facts to Show That Defendant Discriminated Based on Her Race**

Counts I and II of the Complaint allege that Plaintiff is a member of a protected class based on her race, that she suffered an adverse employment action (termination) despite performing at a level meeting her employer's legitimate expectations at the time, and that the position she previously occupied remains open and similarly situated employees outside of her protected class (i.e., non-African American employees) received different (non-disciplinary) treatment.  *Id*. ¶¶ 35–39.  However, nowhere in the Complaint can the Court identify any allegation—factual or otherwise—that suggests Defendant's treatment of Plaintiff was in fact based on her race.  Plaintiff recounts a devolving relationship with her supervisors stemming from certain negative comments made about Plaintiff's job performance and from Plaintiff's objection to (sometimes profane) comments from co-workers concerning Plaintiff's division, the FFTs.  Nothing in Plaintiff's recitation supports a finding that these interactions and related comments were racially motivated.

Title VII makes it unlawful for an employer to "discharge any individual or otherwise to discriminate against any individual because of such individual's race color religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). This protection does not, however, mean that Title VII was "designed to create a federal remedy for all offensive language and conduct in the workplace," *Rayyan v. Va. Dep't of Transp.*, 719 F. App'x 198, 203 (4th Cir. 2018) (quoting *Hopkins v. Bah. Gas & Elec. Co.*, 77 F.3d 745, 754 (4th Cir. 1996)), or otherwise designed to vindicate all offended feelings in a workplace. *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) ("[M]ere utterance of an epithet which engenders offensive feelings in an employee, does not sufficiently affect the conditions of employment to implicate Title VII.") (internal quotations and citations omitted). Because Plaintiff does not allege that anyone involved in her termination made any discriminatory comments to or about her, instead simply asserting that other non-African American employees were neither disciplined nor terminated, Plaintiff has failed to state a claim for discriminatory discharge and for disparate treatment on the basis of race.[1] Counts I and II will therefore be dismissed.

**B. Plaintiff Does Not Allege Facts to Show She Experienced a Hostile Work Environment Due to Her Gender**

Plaintiff rests her Hostile Work Environment claim on unwelcomed conduct "based on [P]laintiff's gender." Compl. ¶ 42. As with her race-based claims, however, nothing in Plaintiff's factual recitation suggests that any of the treatment Plaintiff experienced was gender-motivated, and her mere recitation of the protected-characteristic element of a Title VII hostile work environment claim is insufficient on its own to state a claim for relief. *Twombly*, 550 U.S. at 555.

---

[1] As Defendant notes, Plaintiff also failed to identify any appropriately comparative employees by which to measure her supposed disparate treatment, and simply saying certain white employees were not terminated is insufficient basis for a Title VII comparison. Mem. Supp. Mot. Dismiss 9 (citing *Yin v. CTI Consultants, Inc.*, No. 3:17cv296, 2018 WL 1569486 at *14 (E.D. Va. Mar. 30, 2010); *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)). Because there is no allegation suggesting any of Plaintiff's treatment was racially motivated, the Court need not analyze this additional ground for Plaintiff's failure to state a claim.

Plaintiff argues that, during the three-hour meeting on October 19, 2021, she "repeatedly refused the coercion of Intercept CEO Bogart and CFO Marinelli" (both of whom are male) "to refrain from using the phrase 'hostile work environment.'" Resp. Mot. Dismiss 4. In the same paragraph, Plaintiff asserts that "an employee who refuses the unwelcome and threatening advances of a supervisor . . . may recover against the employer . . . ." *Id*. From this, the Court deduces that Plaintiff would have the Court construe Bogart's and Marinelli's alleged pressuring as an "unwelcome and threatening advance." Nothing in the facts supports such a finding. Rather, the facts suggest that Bogart and Marinelli were motivated by an intent to defuse and course-correct an increasingly negative working relationship with Plaintiff, and there was nothing sexually coercive or otherwise gender-based about the interaction.

Finally, Plaintiff argues that "Defendants do not dispute that a reasonable jury could find that Lucas objectively perceived her work environment as abusive and hostile, as did her team of FFTs." *Id*. 18. Plaintiff and her coworkers may very well have felt that the negative comments and profanity they heard from others at Intercept was demeaning, abusive, and/or "derogatory and belittling." *Id*. Nevertheless, as stated previously, Title VII does not insulate employees from any and all offensive statements or behavior. *Harris*, 510 U.S. at 21. Instead, Title VII exists to protect certain groups of people from discrimination and harassment based on their membership in the protected class. Moreover, to allege a "hostile work environment" claim under Title VII, there is a "'high bar' for [actionable] conduct attributable to a defendant," and this high bar "cannot be met merely by alleging 'rude treatment,' 'callous behavior,' or 'routine difference of opinion and personality conflict.'" *Shomo v. NAPA Mgmt. Servs. Corp.*, 1:22cv989, 2022 U.S. Dist. LEXIS 220346 at *12 (E.D. Va. Dec. 6, 2022) (quoting *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008)). The Complaint's allegations of negative feedback from supervisors and

conflict with coworkers over profanity, gossip, and negative comments about team performance are just the type of rude treatment, callous behavior, and routine difference of opinion that do not constitute severe or pervasive harassment. Nor do those allegations constitute evidence that the conflict Plaintiff experienced was in any way related to her gender.

In light of Plaintiff's failure to plead any facts to support her claim that she suffered a hostile work environment *because of* her gender, and for failure to plead facts suggestive of more than just interpersonal differences and poor communication, Count III will be dismissed.

**C. Plaintiff Did Not Make a Valid Title VII Complaint to Defendant, thus Her Retaliation Claim Fails**

"[S]ection 704(a) of Title VII prohibits an employer from taking an adverse employment action against any employee 'because [s]he has opposed *any practice made an unlawful employment practice under this subchapter.*'" *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005) (emphasis added) (quoting Title VII § 704(a), 42 U.S.C. § 2000e-3(a)). In this case, while Plaintiff did submit a complaint to her employer and she did use the buzzwords "hostile work environment," nothing in her complaints to Defendant actually implicated Title VII discrimination. As discussed repeatedly above, Plaintiff at no point has alleged that she faced discrimination based on her race, gender, or other protected characteristic or that she complained of such protected-class-based discrimination to Defendant. Instead, Plaintiff complained to Defendant of the following:

- Managerial interference in Plaintiff's and her subordinate FFTs' operations;
- "False and unfounded" critiques concerning Plaintiff's performance leveled by her supervisor, Jennifer Shively;
- "Improper statements during staff meetings and to the staff directly, indicating that the FFT's are not training the [foster] families properly;
- "Highly offensive, intimidating, threatening, and inappropriate language to and in reference to [Defendant's] staff and foster families"; and
- Gossip and pejorative statements from various members of Defendant's staff about FFT services.

Compl. ¶¶ 9–10, 15–17. These complaints never once reference that Plaintiff felt that she was being unfairly treated on account of her race or gender, or that the "hostile work environment" she perceived was, as she now complains, specifically hostile towards her and other women on account of their gender.

Though Plaintiff may have opposed certain practices in place at Intercept and/or voiced complaints about the general working environment, she did not in fact "oppose[] [a] practice made an unlawful employment practice under [Title VII]," *e.g.*, race- or gender-based discrimination. Title VII § 704(a), 42 U.S.C. § 2000e-3(a); *see also Mixon v. Charlotte-Mecklenburg Sch.*, 3:11cv228, 2011 U.S. Dist. LEXIS 124291 at *15 (W.D.N.C. Aug. 5, 2011) ("A mere complaint of harassment or discrimination in general, without any connection to a protected class, is insufficient."); *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011) ("Title VII is not a general bad acts statute . . . and it does not prohibit private employers from retaliating against an employee based on her opposition to discriminatory practices that are outside the scope of Title VII."). Plaintiff therefore has failed to state a claim for unlawful retaliation pursuant to Title VII, and Count IV will be dismissed.

## V. DISMISSAL WITH PREJUDICE

Whether to dismiss an action with or without prejudice is within the sound discretion of the district court. *See Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985). "Where amendment is futile, courts have exercised their discretion to deny leave to amend and dismiss with prejudice." *Morefield v. Bailey*, 959 F. Supp. 2d 887, 907 (E.D. Va. 2013). In this case, it is apparent from Plaintiff's detailed Complaint and the arguments presented in her Opposition to the Motion to Dismiss that she has alleged all relevant facts and occurrences, and that, had there been instances of race- or gender-motivated discrimination and harassment, Plaintiff

would certainly have included those. Instead, the Complaint—which otherwise includes detailed allegations and full excerpts from relevant workplace communications—is utterly silent on the topic of race or gender, except where Plaintiff formulaically recites the elements of her claims. Plaintiff has effectively had two opportunities to voice her complaints of discrimination: first, to her employer (such complaints again being quoted in full in the Complaint), and second, now to the Court. Given this history, the Court finds that amendment would be futile, as Plaintiff cannot plausibly conjure additional facts that would somehow transform Defendant's actions into violations of Title VII.

## VI. CONCLUSION

For the reasons set forth above, Plaintiff has failed to state any claim under Title VII and amendment would be futile. Defendant's Motion to Dismiss (ECF No. 3) will therefore be granted, and this civil action will be dismissed with prejudice.

An appropriate Order shall issue.

/s/ 
Roderick C. Young  
United States District Judge

Richmond, Virginia  
Date: May 12, 2023